Arthur E. Blyn, J.
The defendant husband in this bitterly contested matrimonial proceeding could surely play the role described by Susan Brownmiller in her devasting book "Against Our Will”. In this book Ms. Brownmiller writes: "It seems eminently sensible to hypothesize that man’s capture and rape of the female led first to the establishment of a rudimentary mate-protectorate and then sometime later to the full-blown male solidification of power, the patriarchy. As the first permanent acquisition of man, his first piece of real property, woman was, in fact, the original building block, the cornerstone of the 'house of the father.’ Man’s forcible extension of his boundaries to his mate and later to their offspring was the beginning of the concept of ownership. Concepts of hierarchy, slavery and private property flowed from, and could only be predicated upon, the initial subjugation of woman.”
Plaintiff wife sues for: (1) judgment of divorce on the grounds of cruel and inhuman treatment; (2) unspecified relief based on a claim that defendant refused to adequately support and maintain the plaintiff and the children of the marriage— constituting neglect; (3) money damages in the sum of $25,000 for conversion of securities in which plaintiff claims a 50% interest; (4) return of a diamond engagement ring and other items of jewelry, with an estimated value of $25,000; passport, *646 birth certificate and other official documents issued to plaintiff; or in the alternative, money damages in the sum of $25,000; and (5) custody of the three children of the marriage.
Defendant husband denies the allegations of the complaint and the various causes of action set forth therein and counterclaims for: (1) a direction that plaintiff give defendant a key to the lock of the apartment in which the parties had resided and to allow him to enter and reside in that apartment; (2) money damages for conversion of securities claimed by the defendant to belong to him; (3) money damages in the sum of $25,000 for false imprisonment (and possibily malicious prosecution — the counterclaim being somewhat ambiguous as to whether malicious prosecution is also claimed); (4) custody of the children.
The parties were married in Jerusalem on September 10, 1963. The plaintiff followed her husband, a United States citizen, to this country on January 20, 1964. They then took up residence at 915 West End Avenue, New York, New York, and they have resided in that apartment until sometime in December of 1974. Thereafter the plaintiff and the children continued to live in that apartment. There are three children of the marriage. Alan, born on July 6, 1964; Steve, born on March 28, 1966; and Iris, born on June 20, 1970.
The defendant is an associate professor of physics at the College of Engineering at the New Jersey Institute of Technology in Newark, New Jersey. He received a Master’s degree in physics from the graduate school of the physics department of Columbia University.
The plaintiff has been a housewife since her marriage. There were a few short stints of employment. She is a person who obviously has not had much formal education and is not at ease with the English language and is without any special skills.
The proceeding was tried without a jury.
The trial took approximately nine days with a record of over 1,200 pages, plus scores of exhibits. During this extended period of time the court had ample opportunity to observe the parties. The court notes that the defendant at the time of the commencement of this trial was, and still is, in contempt of an order of Mr. Justice Gomez dated April 15, 1975. The order of contempt was signed by Justice Gomez on July 8, 1975. The attorney for the defendant contended, during the trial, that *647 the order of Justice Gomez dated April 15, 1975 was never served on the defendant personally and he therefore was not in contempt of that order. There is no question, however, in this court’s mind that the defendant had full knowledge of the order of Justice Gomez and that he consciously and deliberately flouted that order as he brazenly stated in open court. To complete this aspect of the court’s observations and comments it should also be noted that the plaintiff moved this court, during trial, for an order requiring the defendant to post a bond to cover the substantial arrears in temporary alimony and child support ordered by Justice Gomez. The court after a hearing held in connection with this request directed the posting of a bond in the sum of $15,000. The defendant was present in court at that time and was personally directed by the court to file such a bond. An order was entered to that effect on September 8, 1975. Defendant failed to comply with that order and a hearing was held on September 19, 1975 as a result of his failure to comply. After the hearing, again at which the defendant was present, the court found that the defendant had willfully disobeyed the mandate of this court, that the defendant had also acknowledged in open court his willful failure to purge himself of the contempt order of Justice Gomez of July 8, 1975. The court thereafter signed an order of commitment on September 24, 1975.
The court believes that this total disregard for the law by the defendant is consistent with his treatment of his wife and children.
He is authoritarian to an extreme. He has a legal right to be that. His treatment of his wife and children smacks of the medieval concept that they are his property. He has a legal right to that view as well.
This court’s decisions are not based on the defendant’s views and attitudes. His attitudes and views, however, are relevant in the area of deciding the probability or improbability of the sharply conflicting testimony of the plaintiff and the defendant. Most of the testimony reduces itself to the credibility of the two parties. The only other witnesses who testified to incidents alleged by the plaintiff did not add much to the plaintiff’s case.
The court disbelieves most of the material portions of the defendant’s testimony. The court’s further observation of the defendant leads it to believe that he is a man who has a barely controlled (that is in court) temper. This belief is also *648 relevant in arriving at a decision as to which version of the conflicting stories is credible.
These preliminary remarks are important, in the opinion of the court, because they form the basis for the conclusions and decisions arrived at by the court.
The plaintiff has pleaded four causes of action.
The first cause of action seeks a judgment of divorce based on cruel and inhuman treatment.
The court finds that the incidents alleged, within the periods of time set forth in the complaint, were substantially borne out by the evidence. The defendant did engage in a course of conduct towards the plaintiff constituting cruel and inhuman treatment. The court credits the testimony of the plaintiff in the following respects: That the defendant did physically assault the plaintiff in October of 1974; that he did threaten her and put her in fear of her life and safety; that he did villify and insult her during the period between October, 1974 and the end of that year; that the defendant again physically assaulted the plaintiff on or about February 16, 1975, and again on February 19, 1975 and still again on March 11, 1975.
The court thus finds that the defendant had engaged in a course of conduct over a continued period of time of verbal and physical abuse and violence towards the plaintiff for the purpose of demeaning her and causing both physical and mental suffering. On the basis of these findings alone the plaintiff is entitled to a judgment of divorce.
The court, however, finds further and separate and independent grounds for a judgment of divorce based on cruel and inhuman treatment.
The defendant "confined” his family, a wife and three children (two male children and one female child) in cramped, impossible conditions in a three-room apartment consisting of a kitchen, living room and bedroom. The dimensions of the rooms and conditions of living in this apartment shocked the court. Even the Department of Social Services would not tolerate such living conditions. That department refused to provide aid to the plaintiff and her three children if they continued to live in that three-room apartment and insisted that the family (the mother and the three children — without the father) must find a two-bedroom apartment.
The testimony as to where they slept, where they ate, where *649 they studied, conveyed an overwhelming feeling of claustrophobia. The court is not dealing with a defendant who was earning a bare living wage. The defendant besides earning an annual salary in the range of $20,000 also had other assets as will be developed later in this decision.
There was an effort made by the defendant to show that he had sought to purchase a house and that the plaintiff had not co-operated in that effort. The court totally rejects the defendant’s good faith in those alleged attempts. His claim that he was interested in purchasing a house but that the plaintiff did not co-operate was not consistent with his total dominion over his family and his demand for blind acceptance of his decisions over their lives. If he had wished to purchase a house the court is convinced that he would have done so whether the plaintiff agreed or not. Further there was no necessity that it be a house. A larger apartment would have sufficed. The defendant’s only reference to such a possibility was that the rent would be too high. There was no proof that he ever attempted to find a larger apartment.
It is the court’s view that by such "confinement” of his family to the miserable conditions under which they were forced to live the defendant created intolerable tensions and thus inflicted mental suffering on the plaintiff. This condition continuing as it did for many years constituted cruel and inhuman treatment. On this other and further grounds the plaintiff is also entitled to a judgment of divorce.
The court feels that this is as good a place as any to deal with the issue of the plaintiff’s changing the lock to the apartment. This was done during the period of time when the parties were living separately by mutual agreement as set forth in the letter agreement between their respective attorneys. The plaintiff thereafter refused to give the defendant a key to the new lock and refused to permit him to reside in the apartment.
The answer of the defendant did not clearly set forth a defense of abandonment although reference was made therein to the changing of the lock. The court believes that the thrust of the defendant’s argument and testimony indicates that such a defense was intended. The court finds that by reason of the plaintiff having been put in fear for her life and safety by the acts and conduct of the defendant prior to the changing of the lock that her action in changing the lock and her refusal to *650 permit the defendant to return was justifiable and therefore did not constitute abandonment on her part.
(Additional matters omitted from publication.)